UNITED STATES v. HEMMER et al.

(District Court, D. South Dakota, S. D. March 27, 1912.)

No. 573.

1. INDIANS (§ 15*)—RESTRICTION ON ALIENATION OF LANDS—RIGHT OF UNITED STATES TO ENFORCE BY SUIT.

The United States may maintain a suit in its own name to enforce restrictions imposed by its laws upon the alienation of lands by Indian grantees under the homestead act.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37–44; Dec. Dig. § 15.*]

2. INDIANS (§ 15*)—RESTRICTION ON ALIENATION OF LANDS—EFFECT OF ERROR IN PATENT.

A restriction imposed by a law of Congress on the alienation of public land patented to an Indian is effective, and all persons are charged with notice thereof, whether or not it is stated in the patent, or even if the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

patent erroneously states a limitation different from the one prescribed by the act, which, in fact, governs the grant.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37–44; Dec. Dig. § 15.*]

3. INDIANS (§ 15*)—HOMESTEAD SETTLERS—LIMITATION ON ALIENATION.

Act July 4, 1884, c. 180, § 1, 23 Stat. 96 (U. S. Comp. St. 1901, p. 1420), which provides that all patents issued to "such Indians as may now be located on public lands or as may  *  *  * hereafter so locate shall be of the legal effect and declare that the United States does and will hold the land thus entered for the period of twenty-five years in trust for the sole use and benefit of the Indian," or of his widow and heirs, is an amendment of Act March 3, 1875, c. 131, § 15, 18 Stat. 420 (U. S. Comp. St. 1901, p. 1419), extending the benefit of the homestead law to any Indian born in the United States who was over 21 years old and the head of a family, and who had abandoned his tribal relations, and containing a 5 years' limitation on alienation, that being the only law then in existence under which Indians were authorized to occupy public land, and the effect of the amendment was to extend the period of limitation on alienation from 5 to 25 years.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37–44; Dec. Dig. § 15.*]

4. INDIANS (§ 15*)—HOMESTEAD SETTLERS—LIMITATION ON ALIENATION.

Such amendment applies to and governs the case of an Indian homesteader who at the time of its enactment had resided for five years on his homestead, but who had not at that time made his final proof.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37–44; Dec. Dig. § 15.*]

5. INDIANS (§ 15*)—LIMITATION ON ALIENATION OF LAND—POWER OF CONGRESS.

Congress has the power to determine when the guardianship which is maintained over Indians shall cease, and may extend the period of limitation on the alienation of land by an Indian at any time before the issuance to him of final patent.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37–44; Dec. Dig. § 15.*]

6. STATUTES (§ 219*)—CONSTRUCTION—CONSTRUCTION OF FEDERAL STATUTES BY DEPARTMENT.

A settled construction by a department of the government of the laws of the United States will not be overturned by the courts, unless clearly wrong.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. § 219.*]

7. INDIANS (§ 15*)—HOMESTEAD LANDS—RESTRICTION ON ALIENATION—STATUTE GOVERNING—EFFECT OF MISTAKE IN PATENT.

A Santee Sioux Indian, having the required qualifications, in 1878 entered a homestead under Act March 3, 1875, c. 131, § 15, 18 Stat. 420 (U. S. Comp. St. 1901, p. 1419). He continued to reside on the land until December, 1884, when he made final proof and payment, and received his final receiver's certificate. In 1890 a patent was issued to him containing a limitation on alienation for 20 years, "as provided by the act of Congress approved January 18, 1881," c. 23, 21 Stat. 315. Such act, however, was a special act which applied only to Winnebago Indians in Nebraska and Wisconsin, and the insertion of such limitation in the patent was through mistake. *Held*, that such limitation was void, and the true limitation was fixed by Act July 4, 1884, c. 180, § 1, 23 Stat. 96 (U. S. Comp. St. 1901, p. 1420), amendatory of the act under which the entry was made, at 25 years; that it was competent for the United States on discovery of the mistake to cancel the patent issued, and issue another containing the 25-years' limitation, and that in the meantime the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

land was not subject to taxation, nor could any rights in or liens upon it be acquired by contract with the Indian grantee, nor by the judgment or decree of any court to which the United States was not a party.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37–44; Dec. Dig. § 15.*]

8. TAXATION (§ 181*)—INDIAN LANDS.

Lands patented to Indians are not taxable so long as the United States has an interest, legal or equitable, therein, or is charged with the performance of some obligation or duty respecting the same.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 45; Dec. Dig. § 181.*]

In Equity. Suit by the United States against Louis Hemmer, William W. Fletcher, J. E. Peart, the Richards Trust Company, the Iowa & Dakota Land Company, Fred D. Henderson, as treasurer of Moody County, S. D., E. A. Hornby, as Auditor of said county, Job Robinson, S. W. Ballard, and L. W. Ballard, copartners as Ballard & Son, and Moody County, S. D. On final hearing. Decree for complainant.

Edward E. Wagner, U. S. Dist. Atty.

Rice & Benson, for defendants Peart, Hemmer, and Fletcher.

Frederick A. Warren, State's Atty., for defendants Moody County, Henderson, and Hornby.

ELLIOTT, District Judge. This action was brought by the United States of America, complainant, against the defendants above named, by the United States district attorney for the District of South Dakota, pursuant to instructions of the Attorney General of the United States.

The complainant states its cause of action in its complaint filed herein, in substance, after the formal portions, as follows:

It is alleged: That Henry H. Taylor, sometimes known and designated Henry Taylor, was, and during all the times named in the complaint was, a Sioux Indian of the full blood, belonging to and a member of the Santee Sioux band of Indians. That on or about October 7, 1878, in pursuance of authority conferred by Act Cong. March 3, 1875, c. 131, 18 Stat. L. 420 (U. S. Comp. St. 1901, p. 1419), he made application to enter, and entered, the W. ½ of the S. W. ¼ of section 22, and the E. ½ of the S. E. ¼ of section 21, in township 106, range 49 W., of the Fifth Principal Meridian, in Moody county, S. D., under an act of Congress entitled "An act to secure homesteads to actual settlers on the public domain," approved May 20, 1862 (chapter 75, 12 Stat. 392), and acts amendatory thereof, by making satisfactory proof under the rules prescribed by the Secretary of the Interior to the officers of the United States land office located at Sioux Falls, S. D., then territory of Dakota, that he, said Henry H. Taylor, was an Indian born in the United States, was the head of a family, was 21 years old, and had abandoned his tribal relations as such Indian. That the application and affidavits filed by said Taylor in

said United States land office and subsequently filed in the General Land Office of the United States contained, among other things:

"That I am an Indian, formerly of the Santee Sioux Tribe; that I have abandoned my tribal relations with said tribe, and adopt the habits of civilized life."

That the application of said Taylor was designated as an Indian homestead application, and the receiver's receipt issued by the receiver of said land office was indorsed and designated "Indian Homestead," as well as the final certificate issued by the receiver of the United States land office at Mitchell, Dakota Territory, dated December 11, 1884. That Taylor resided upon, and occupied, said premises as his homestead, and made satisfactory proof to the officers of the United States land office in charge of the land office at Mitchell, as well as the General Land Office at Washington, of his occupancy and residence upon said land for a period of five years, and, in pursuance of his homestead entry thereon, made full payment for said land, and received his final receiver's certificate December 11, 1884, wherein it was designated that the patent to be issued to said Taylor for said homestead entry was, and should be, subject to all the restraints and restrictions upon alienation of said land, as provided by said Act March 3, 1875, as well as the Act Cong. July 4, 1884, c. 180, 23 Stat. L. 96 (U. S. Comp. St. 1901, p. 1420).

That said Taylor continued to reside upon said land with his family and occupy the same as his homestead until about April 28, 1909, when he and his family were forcibly removed therefrom by the defendant Louis Hemmer, who removed or caused said Taylor and his family to be removed from said premises by force and violence, and who has by such means wrongfully deprived said Taylor of the possession of said premises at all times since. That while said Taylor, with his family, resided upon and occupied said real property in the manner above stated, and about August 8, 1908, he and his wife, Anna Taylor, entered into an agreement or contract for deed with the defendant J. E. Peart, whereby said Taylor and his said wife agreed to sell and convey said real property above described to the defendant, Peart, for a valuable consideration. That said contract for deed was filed for record and recorded in the office of the register of deeds of Moody county, S. D., August 29, 1908. And thereafter, on or about September 8, 1908, the defendant Peart assigned said contract to the defendant William W. Fletcher, which assignment was in writing, and was filed for record in the office of said register of deeds on the 11th day of September, 1909, and duly recorded in said office. That thereafter, about November 21, 1908, said Taylor and his wife having refused to sell and convey said real property to said Fletcher in accordance with said contract, said Fletcher caused a suit to be instituted in this court against said Taylor and wife to compel the specific performance of said contract to convey said real property by said Taylor and his wife, and on the 30th day of December, 1908, a decree of this court was entered in said suit, a copy of which is set forth in the complaint. In substance, said judgment in said action wherein William W. Fletcher was complainant and Henry Taylor and Anna

Taylor were defendants finds the execution of the said contract by Taylor and wife to Peart, and the assignment to Fletcher, and decrees the specific performance thereof, and further provides that if the said Henry Taylor and Anna Taylor, the defendants, refuse to execute and deliver a deed to said William W. Fletcher, conveying said premises within 30 days from the date of said decree, which was the 30th day of December, A. D. 1908, F. A. Spafford of Flandreau, S. D., was thereby appointed master, to execute and deliver to the said Fletcher a deed of conveyance to said premises, and the decree provided that such deed should in all respects be of the same force and effect as if made, executed, and delivered by the said Henry Taylor and Anna Taylor, his wife.

It is further alleged that, pursuant to said decree, a deed was executed by said Spafford to the defendant Fletcher, purporting to convey the said real property to said Fletcher, and on the 5th day of February, 1909, the defendant Fletcher executed and delivered a deed to said property to said Hemmer, both of which deeds were recorded in the office of the register of deeds of said county. It is therefore alleged that the defendant Hemmer claims under this deed an estate in or right to the possession of said real property by virtue of said deed from Fletcher to him, and that he deprives said Taylor of the possession of this land by virtue thereof.

It is further alleged, in substance, that although the said Indian entered this land as a homestead under and pursuant to Act March 3, 1875, that he made his final proof and payment for said land under the requirements promulgated by the Secretary of the Interior subsequent to July 4, 1884, and that he was entitled to receive from the United States or its duly authorized officers and agents a patent for said land, in accordance with the provisions of said act of July 4, 1884, which contains a provision that the United States will hold the land for a period of 25 years in trust for the sole use and benefit of the Indian, etc.

It is further alleged that although said Taylor was entitled to a patent under said act of Congress, containing this 25-year nonalienation provision, there was issued to him by mistake a patent purporting to have been issued under the act of Congress approved January 18, 1881. (chapter 23, 21 Stat. 315), and the patent contained the provision:

"This patent is issued upon the express condition that the title hereby conveyed shall not be subject to alienation or incumbrance, whether by voluntary conveyance or by judgment, or the decree of any court, or subject to taxation of any character, and shall remain inalienable and not subject to taxation for a period of twenty years from the date thereof, as provided by the act of Congress approved January 18, 1881."

It is further alleged that such patent was issued without authority of law and by mistake, and that said act of Congress approved January 18, 1881, was enacted for the sole use and benefit of the Winnebago Indians of Nebraska and Wisconsin, and that the said Taylor was not a Winnebago Indian of Nebraska or Wisconsin, and that the said Taylor was a Santee Indian of the Sioux Tribe as above

stated, and was not entitled to the provisions of said act of Congress of January 18, 1881.

It is further alleged that, when said patent was issued as above stated, as a matter of fact he was entitled to receive a patent to the effect that the United States would hold said land for the use and benefit of said Taylor or his widow and heirs, in trust, for a period of 25 years, and not otherwise, under the provisions of the act of 1884.

It is further alleged that, although said Taylor was entitled to such patent, none was issued to him until the 10th day of June, A. D. 1909, on which date the President of the United States caused to be issued to the said Taylor a patent, set forth in the complaint, which was a patent issued in accordance with the provisions of the act of Congress of July 4, 1884, and contained a provision that the United States does and will hold the land above described for the period of 25 years, in trust, for the sole use and benefit of said Henry Taylor, or, in case of his decease, of his widow and heirs, according to the laws of the state where such land is located, and at the expiration of said period the United States will convey the same by patent to the said Henry Taylor, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever.

It is further alleged that as a matter of fact that at all times since the homestead entry of the said Taylor upon the land above described the United States has held said land in trust for the sole use and benefit of said Taylor, and that it now holds the same for him in trust for his sole use and benefit, and that the obligation rests upon this plaintiff, by virtue of said Act July 4, 1884, to convey the same by patent to him, or his widow and heirs in fee, discharged of said trust, and free of all incumbrances whatsoever, for 25 years after the date of the last-mentioned patent, to wit, June 10, 1909.

It is further alleged that, when the said Taylor and wife entered into the contract for deed with the defendant Peart, said land was held by the United States in trust as aforesaid, and that said Taylor and his wife had no authority or power to contract for the delivery of a deed or the conveyance of said land, or to alienate the same in any manner whatsoever, and that the defendants could not lawfully acquire any right, title, or interest whatsoever in said real property by virtue of the assignment of said contract purporting to convey said land, nor by the decree of the court above referred to herein, wherein the said Fletcher was plaintiff and the said Taylor and wife were defendants, and to which action this plaintiff was not made a party, further alleging that neither the Secretary of the Interior nor any other officer of the United States have ever approved or ratified any sale or conveyance of said premises.

It is further alleged, in substance, that, notwithstanding said premises have been held in trust by the United States for the use and benefit of said Indian, the defendant Henderson, as treasurer of said Moody county, S. D., and Hornby as auditor of said county, in their official capacity, as well as the county of Moody, have attempted to cause said land to be assessed and taxes levied and caused to be levied against the said land, listing said property for sale for the non-payment of taxes so assessed and levied, and said county as well as

said officers now threaten to levy and collect taxes thereon by sale of said property, notwithstanding the title thereof is held by the United States as aforesaid, and that said land has at all times been, and is now, exempt from taxation. It is further alleged that defendant Robinson claims some interest or estate in said land by virtue of a certain treasurer's tax deed issued by the treasurer of said county of Moody to one Fred L. Rice, who conveyed, or attempted to convey, the same to said Job Robinson, and he thereby claims to have acquired an estate therein by virtue of said tax deed. It is further alleged that the defendants Iowa and Dakota Land Company and the defendant Richards Trust Company each claim some estate in or right to said land by virtue of treasurer's tax deeds heretofore executed by the treasurer of Moody county for unpaid taxes assessed upon said premises.

The complainant further alleges that all of said deeds and the decree of the court entered as above set forth are each and all of them clouds upon the title to said land, and that each and all of said defendants claim some right, interest, or estate therein by virtue thereof. It is thereupon further alleged that in May, 1908, there was filed and docketed in the office of the clerk of the circuit court within and for Moody county, S. D., a judgment in favor of the defendants S. W. Ballard and L. W. Ballard, copartners as Ballard & Son, amounting to $198.85, by virtue of which a lien is claimed upon said real property, which is also a cloud upon the title thereof. It is further alleged that this is a suit in equity brought against each and all of the said defendants for the purpose of removing the clouds from said title and canceling each and all of said instruments to avoid a multiplicity of suits and actions at law for the purpose of protecting said land for the use and benefit of said Taylor, and in the execution and discharge of the trust reposed in the United States by the laws of the United States.

Complainant thereupon asks that each and all of the instruments above referred to, as well as the decree of this court above named, be canceled, vacated, and set aside and held for naught, that the judgment of the defendants Ballard & Son be adjudged to be no lien against the said real property, and that each and all of the defendants be decreed to have no estate, right, title, or interest in or lien upon said real property, and that each and all of them be enjoined and forever estopped from claiming any estate, right, title, or interest therein, and that the defendant Moody county, as well as the treasurer and auditor thereof, and all of its officers, be enjoined from levying, assessing, or collecting taxes on or against the said real property, and that the same be decreed not subject to taxation by said county or any of its officers, and for such other and further relief as equity may require.

To this complaint, the defendant S. W. Ballard and L. W. Ballard, copartners as Ballard & Son, filed a disclaimer, and prayed leave to be dismissed.

An appearance was made and an answer filed in behalf of the defendants Moody county, S. D., Henderson as treasurer, and Hornby

as auditor, alleging, in substance, that the land described in the complaint had been, under the circumstances set forth in the complaint, the homestead of said Taylor, and that he had received his final receipt from the proper officer of the land office upon making his final proof thereon, dated the 11th day of December, 1884, and alleging that by reason of the facts set forth, substantially as stated in the complaint herein, that said Henry Taylor was then and there entitled to a patent from the United States conveying to him in fee the premises above described, subject only to the restrictions and limitations contained in the fifteenth section of the act of Congress of March 3, 1875, in regard to alienation and incumbrance, such restrictions being set forth therein. It then alleges that the patent that was issued was by mistake issued under the provisions of the law of 1881, with a nonalienation clause of 20 years from the date of said patent, whereas the only restriction which properly should have been inserted in said patent was that contained in the act of March 3, 1875, limiting the period of alienation and incumbrance to five years after the date of such patent. It further sets forth the issuance of patent dated the 10th day of June, 1909, by the United States to said Henry Taylor, under the provisions of the act of July 4, 1884, fixing the period of nonalienation at 25 years as therein provided.

It thereupon further states that when this act of July 4, 1884, was passed that the said Henry Taylor had lived upon the said homestead more than the period or full term of five years, entitling him to make proof and receive final patent under the provisions of the act of March 3, 1875, alleging that as he had completed his residence and earned a patent thereto prior to the act of July 4, 1884, and as full citizenship had been conferred upon him and as the United States had previously granted the said premises to the said Henry Taylor, the said patent was issued without any authority of law, and is null and void. These defendants demanded a dismissal of complainant's bill of complaint herein.

The defendants Louis Hemmer, William W. Fletcher, and J. E. Peart also appeared and answered, setting up in substance the answer filed by their codefendants, above referred to.

The action is brought on for trial before this court by stipulation upon the following agreed statement of facts:

(1) That Henry H. Taylor is a full blood Sioux Indian, and a member of the Santee Sioux band of Indians, and is not now a member of the Winnebago band of Indians, and never had any connection with said Winnebago band of Indians.

(2) That on the 7th day of October, 1878, said Henry H. Taylor, under the name of Henry Taylor, made homestead application No. 10,666 at the United States land office at Sioux Falls, Dakota Territory, to enter, and did enter, as a homestead the following described real property, situate in Moody county, then territory of Dakota, now state, of South Dakota, to wit: The W. ½ of the S. W. ¼ of section twenty-two (22), and the E. ½ of the S. E. ¼ of section twenty-one (21), in township one hundred and six (106) N., of range forty-nine (49) west, of the Fifth Principal Meridian, containing 160 acres of land according to the United States government survey thereof, said land being then a part of the public domain and subject to entry under the homestead laws of the United States then in force.

(3) That said Taylor was at said time an Indian born in the United States,

was the head of a family, and was over the age of 21 years, and had abandoned his tribal relations as such Indian.

(4) That immediately after making such homestead entry said Taylor entered upon said land and established a residence thereon, and resided thereon for a period of five years, and made satisfactory proof of all of the aforesaid facts to the Commissioner of the General Land Office. That the bundle of papers hereto annexed marked "Exhibit A," consisting of homestead application, affidavits, receipts, final proof, affidavit of publication, and nonmineral affidavit are true copies of the original papers filed in connection with said homestead entry, and are hereby made a part of this agreed statement of facts.

(Paragraph 5 is omitted, as it refers to photographic copy of letter.)

(6) That on the 6th day of June, A. D. 1890, a patent for said land was issued to the said Henry Taylor, of which the following, marked "Exhibit B," is a true copy:

"The United States of America.

"To All to Whom These Presents shall Come—Greeting:

"Homestead Certificate No. 5,414.

"Application 10,666.

"Whereas, there has been deposited in the General Land Office of the United States a certificate of the register of the land office at Mitchell, Dakota Territory, whereby it appears that pursuant to the act of Congress approved 20th May, 1862, to secure homesteads to actual settlers on the public domain and the act supplemental thereto, the claim of Henry Taylor has been established and duly consummated in conformity to law, for the west half of the southwest quarter of section twenty-two and the east half of the southeast quarter of twenty-one, in township one hundred and six north, of range forty-nine west, of the Fifth Principal Meridian, in Dakota Territory, containing one hundred and sixty acres according to the official plat of the survey of the said lands returned to the General Land Office by the Surveyor General.

"Now know ye: That there is therefore granted by the United States unto the said Henry Taylor the tracts of land above described; to have and to hold the said tract of land with the appurtenances thereof unto the said Henry Taylor and to his heirs and assigns forever. Subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes and rights to ditches and reservoirs used in connection with such water rights as may be recognized and acknowledged by the local customs, laws and decisions of courts and also subject to the right of the proprietor of a vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted as provided by law. This patent is issued upon the express condition that the title hereby conveyed shall not be subject to alienation or incumbrance either by voluntary conveyance or by judgment, decree or order of any court, or subject to taxation of any character, but shall remain inalienable and not subject to taxation for the period of twenty years from the date hereof, as provided by act of Congress approved January 18, 1881.

"In testimony whereof, I, Benjamin Harrison, President of the United States of America, have caused these letters to be made, patent and seal of the General Land Office to be hereunto affixed.

"Given under my hand at the city of Washington the sixth day of June, in the year of our Lord one thousand eight hundred and ninety, and of the Independence of the United States the one hundred and fourteenth.

"[United States]
"By the President:                         Benjamin Harrison.
"By M. McKean, Secretary.
"Rec. Vol. 9, Pages 313 to 314.

"I. R. Convell,
"Recorder of the General Land Office Ad Interim."

That said patent was recorded in the office of the register of deeds for Moody county, S. D., August 13, 1908, in Book 20 at page 463 thereof.

(7) That said Taylor continued to own and occupy said land with his fam-

ily, and on the 8th day of August, A. D. 1908, he and his wife made a contract with one J. E. Peart, of which the following, marked "Exhibit C," is a true copy:

"This agreement, made and entered into this 8th day of August, A. D. 1908, by and between Henry Taylor and his wife Anna Taylor, parties of the first part, and J. E. Peart, party of the second part, witnesseth:

"That if the party of the second part, shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said parties of the first part hereby covenant and agree to convey and assure to the said party of the second part, in fee simple, clear of all incumbrances whatsoever, by a good and sufficient warranty deed and clear abstract, the lots, piece or parcel of ground, situate in the county of Moody, and state of South Dakota, known and described as follows: The west half of the southwest quarter (W. ½ S. W. ¼) of section twenty-two (22) and the east half of the southeast quarter (E. ½ S. E. ¼) of section twenty-one (21), township one hundred six (106) north, of range forty-nine (49) west, of the 5th P. M., in Moody county, state of South Dakota. And the said party of the second part hereby covenants and agrees to pay to said party of the first part the sum of twenty-four hundred dollars, in the manner following, payable at the office of Jordan & Warren at Flandreau, South Dakota: Parties of the first part shall accept lot 1 of the N. W. ¼ of Sec. 21—107—48 Moody county, South Dakota, at a consideration of $550.00 as payment of the within described land.

"The party of the second part shall keep out the sum of $800.00 of the purchase price until the S. E. ¼ of the S. E. ¼ of Sec. 21—106—49, shall have been probated and good and clear abstract shall have been furnished to turn over said $800.00 the bal. to be paid in cash upon the furnishing of a clear abstract and warranty deed within 30 days from date hereof.

"It is mutually agreed, by and between the parties hereto that the time of payment shall be an essential part of this contract; and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

"In testimony whereof, both parties have hereunto set their hands and seals the day and year hereinbefore written.

Henry Taylor. [Seal.]
"Anna Taylor. [Seal.]
"J. E. Peart. [Seal.]

"Signed, sealed and delivered in presence of
"Zenas Graham.
"F. A. Warren.

"State of South Dakota, County of Moody—ss.:

"On this 8th day of August, in the year one thousand nine hundred and eight, before me, F. A. Warren, a notary public in and for said county and state, personally appeared Henry Taylor, Anna Taylor, and J. E. Peart, known to me to be the persons who are described in and who executed the foregoing and within instrument, and acknowledged to me that they executed the same.            F. A. Warren, Not. Pub. Moody County, So. Dak."

Said contract was acknowledged and was recorded in the office of the register of deeds for Moody county, S. D., August 29, 1908, in Book 24 at page 606.

(8) That the said J. E. Peart on or about September 8, 1908, assigned said contract to the defendant William W. Fletcher. That said assignment was in writing, and was filed for record September 11, 1908, at 10 o'clock a. m., and recorded in the office of the register of deeds for said county of Moody in Book 24 at page 608. That after the execution of the said contract between the said J. E. Peart and Henry H. Taylor and wife set out above, the said Taylor and his family took possession of said lot 1 of the N. W. ¼ of section twenty-one (21), in township one hundred seven (107), range forty-eight (48), described in said contract, and has since resided thereon, and the said Peart took possession of the W. ½ of the S. W. ¼ of section twenty-two (22), and the E. ½ of the S. E. ¼ of section twenty-one (21), in township one hundred six (106) N., of range forty-nine (49).

(9) That after making said contract, as aforesaid, the said Taylor and his wife refused to sell and convey his said homestead described in said contract to the said Peart or Fletcher, and on the 21st day of November, 1908, said Fletcher instituted a suit against said Taylor and his wife in the United States Circuit Court for the District of South Dakota to compel the specific performance of said contract, and the original files in said suit are hereby referred to and adopted and made a part of this statement as Exhibit D, and copies thereof may be hereto attached and marked Exhibit D, and submitted in lieu of the original.

(10) That thereafter, on the 4th day of February, 1909, F. A. Spafford of Flandreau, S. D., who was appointed master to execute such deed in the decree in said suit, executed and delivered to the defendant William W. Fletcher a deed, a copy of which is hereto annexed, marked "Exhibit E." Said deed was acknowledged and filed for record and recorded in the office of the register of deeds for Moody county, S. D., February 10, 1909, in Book 29 at page 28, and on the 5th day of February, A. D. 1909, the said William W. Fletcher executed and delivered to the defendant Louis Hemmer a warranty deed, a copy of which is hereto annexed marked "Exhibit F," which deed was acknowledged and filed for record and recorded in the office of the register of deeds of said county February 8, 1909, in Book 30 at page 6, and the said defendant Hemmer claims to be the owner of said premises by virtue of said deed, and is and was, at the commencement of this suit, in possession of said premises.

(11) That before the commencement of the suit between Fletcher and Taylor, referred to above, and after the execution of the agreement between Peart and Taylor, set out above, the defendant Peart signed, acknowledged, and delivered to Jordan & Warren, who were acting as the attorneys for Taylor in said transaction, a deed, Exhibit I attached, and, in addition thereto, the said Peart left with said Jordan & Warren the balance of the purchase price under said contract, amounting to about $1,000, and that, when Taylor was notified that the said deed and money had been left with the said Jordan & Warren, he refused to receive the same, and that he has at all times since refused to receive said deed or any deed for said land, and has refused to receive said money; and thereafter, about the month of April, 1909, he attempted to remove with his family back to the said homestead property, and was denied the possession thereof by the defendant Hemmer, who then claimed the same under the deed from Fletcher, referred to above, and who has at all times since denied Taylor the possession of said premises, or any part thereof.

(12) That on the 10th day of June, A. D. 1909, the President of the United States caused to be issued and delivered to the said Taylor a patent for said land, a copy of which is hereto annexed marked "Exhibit G," and the United States now claims to hold the title of said land in trust for the said Taylor. The letters hereto annexed marked "Exhibit H," consisting of a letter dated November 21, 1907, from the Acting Commissioner of Indian Affairs, to Jordan & Warren, a letter dated March 16, 1907, from Larrabee, Acting Commissioner of Indian Affairs, to S. M. Brosius, a letter dated June 24, 1907, from Larrabee, Acting Commissioner, to the superintendent of Riggs Institute, a letter dated March 9, 1907, from Larrabee, Acting Commissioner of Indian Affairs, to Hon. Robert J. Gamble, are made a part of this statement, to be considered as such subject to the objection on the part of the complainant that the same are incompetent, and have no binding effect on the complainant in this suit. That the defendant Peart had said letters in his possession before entering into the contract above set out with Taylor, and claims to have relied thereon in making said contract.

(13) That in 1894 the county treasurer of Moody county and the auditor of said county, and the board of county commissioners thereof, assessed said land for taxation, and levied taxes thereon, and they have assessed the same for taxation and levied taxes thereon each and every year since 1894, and have caused the land to be sold for taxes, and at the time of the commencement of this suit and at all times since they have claimed and asserted the right to assess said land for taxation and to levy taxes against the same, and do now claim such right.

From the above and foregoing statement of facts, it becomes apparent that the following questions are involved within the issues here presented for determination:

[1] (1) Under the facts stipulated in this case, has the United States such an interest in the real property in question as entitles it to maintain this suit in its own name? This must be answered in the affirmative. This right has been opposed in the courts of the United States upon various grounds, but it is now well settled that the United States, by virtue of its peculiar relationship to the Indians and to prevent the policy of the government, to be worked out through legislation, being defeated, may enforce restrictions of the alienation of real estate in the courts in its own name, in order to effect its public policy. U. S. v. Allen, 179 Fed. 13, 103 C. C. A. 1; Bowling v. U. S. (C. C. A.) 191 Fed. 19; U. S. et al. v. Boyd et al. (C. C.) 68 Fed. 577.

[2] (2) What is the effect of the patent to the premises in question issued to Taylor on the 6th of June, 1890, purporting to be issued pursuant to an act of Congress approved June 18, 1881? In the determination of this issue, it must be remembered that, under the agreed statement of facts, Taylor was an Indian having the qualifications named in the Act of March 3, 1875, filed upon the land in question, on the 7th day of October, 1878, made his final proof on the 11th day of December, 1884, and upon such proof patent was issued to Taylor on June 6, 1890, under the provisions of the act of Congress of June 18, 1881, which it is conceded by all of the parties to this suit related exclusively to the Winnebago Indians, and contained a provision against the alienation of the land for a period of 20 years from the date of the patent, and therefore had no relation to the rights of this Indian, Taylor, to whom this patent was issued. Under no possible theory can this law relating to the Winnebago Indians alone be relevant to the rights of the Indian, Taylor, to whom the patent was issued, or of the defendants in this action. The limitation in the patent inserted under the provisions of that statute are void. U. S. y. Saunders (C. C.) 96 Fed. 268; Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 779.

Even though the patent in this case had failed to show that Taylor was an Indian, and contained no limitation whatever upon alienation, the act of the executive officers of the United States issuing the patent without condition or limitation (if limitations should have been imposed upon alienation under the then existing provisions of the Acts of Congress) could not affect such limitation prescribed by Congress, and the purchasers from Taylor, the Indian, were chargeable with knowledge of the limitations imposed upon his title by the acts of Congress. Taylor v. Brown, 5 Dak. 335, 40 N. W. 525; Id., 147 U. S. 640, 13 Sup. Ct. 549, 37 L. Ed. 313; Eells v. Ross, 64 Fed. 417, 12 C. C. A. 205. The rule of caveat emptor applies to these defendants taking this contract, assignment of the contract, judgment, and tax liens. They are charged with notice, not only of all the facts appearing on the face of the patent, but were also bound by actual as well as constructive knowledge and notice of any defect or mistake

in the patent, which was obvious or which might have been known by proper diligence. Wissler v. Craig's Adm'r, 80 Va. 22; Burwell's Adm'rs v. Fauber, 62 Va. 446; Tilley v. Bridges, 105 Ill. 336.

[3] There is really no contention on the part of either of the parties to this action upon the two propositions above referred to. The plaintiff rests its entire case upon a determination of the rights of the plaintiff upon the construction its officers have placed upon the laws of the United States, the plaintiff insisting: That this Indian, Henry Taylor, was an Indian with qualifications named in Act Cong. March 3, 1875. That he filed upon the land in question on the 8th day of October, 1878, entered the land in controversy, as a homestead, under the provisions of section 15, Act Cong. 1875, which is as follows:

"That any Indian born in the United States, who is the head of a family, or who has arrived at the age of twenty-one years, and who has abandoned, or may hereafter abandon, his tribal relations, shall, on making satisfactory proof of such abandonment, under the rules to be prescribed by the Secretary of the Interior, be entitled to the benefits of the act entitled 'An act to secure homesteads to actual settlers on the public domain,' approved May twentieth, eighteen hundred and sixty-two, and the acts amendatory thereof, except that the provision of the eighth section of the said act shall not be held to apply to entries made under this act: Provided, however, that the title to lands acquired by any Indian by virtue hereof shall not be subject to alienation or incumbrance, either by voluntary conveyance or the judgment, decree, or order of any court, and shall be and remain inalienable for a period of five years from the date of the patent issued therefor: Provided, that any such Indian shall be entitled to his distributive share of all annuities, tribal funds, lands, and other property, the same as though he had maintained his tribal relations; and any transfer, alienation, or incumbrance of any interest he may hold or claim by reason of his former tribal relations shall be void."

That said Taylor made his final proof of settlement and residence on said land as required by the homestead laws of the United States, from which it appeared that he actually took up his residence thereon June 10, 1879, and resided there continuously until the date of his final proof, to wit, December 11, 1884. That the homestead papers show that said Taylor was a Santee Sioux Indian, and on the date of said final proof the receiver's final receipt was issued to Taylor showing the payment of the final fee by him and on the same date his final homestead certificate was also issued, which shows the same to be an Indian homestead entry. Thereafter, on the 6th day of June, 1890, a patent was issued to said Taylor by the officers of the United States, similar in form to other homestead patents, except that there is inserted a conditional clause as follows:

"This patent is issued upon the express condition that the title hereby conveyed shall not be subject to alienation or incumbrance either by voluntary conveyance or by judgment, decree or order of any court, or subject to taxation of any character, but shall remain inalienable and not subject to taxation for the period of twenty years from the date hereof, as provided by act of Congress approved June eighteenth, eighteen hundred and eighty-one."

In the meantime the Act of July 4, 1884, was passed, which provides as follows:

"That such Indians as may now be located on public lands, or as may, under the direction of the Secretary of the Interior, or otherwise, hereafter, so locate, may avail themselves of the provisions of the homestead laws as

fully and to the same extent as may now be done by citizens of the United States; and to aid such Indians in making selections of homesteads and the necessary proofs at the proper land offices, one thousand dollars, or so much thereof as may be necessary, is hereby appropriated; but no fees or commissions shall be charged on account of said entries or proofs. All patents therefor shall be of the legal effect, and declare that the United States does and will hold the land thus entered for the period of twenty-five years, in trust for the sole use and benefit of the Indian by whom such entry shall have been made, or, in case of his decease, of his widow and heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever."

The agreed statement of facts further shows that the President of the United States on the 10th day of June, A. D. 1909, caused to be issued and delivered to the said Indian, Taylor, a patent for said land in form usual in the case of homestead patents, containing the following clause:

"Know ye, that the United States of America, in consideration of the premises, and in accordance with the provisions of said Act of Congress of July 4, 1884, hereby declare that it does and will hold the land above described (same being the land in controversy herein) for the period of twenty-five years, in trust, for the sole use and benefit of the said Henry Taylor, or, in case of his decease, of his widow and heirs, according to the laws of the state where such land is located, and at the expiration of said period the United States will convey the same by patent to the said Henry Taylor, or his widow and heirs, as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever; subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purpose, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws and decisions of the courts, and also subject to the right of the proprietor of a vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted as provided by law. This patent is issued in lieu of one containing the twenty-year trust clause, dated June 6, 1890, which has been canceled."

As above stated, there is no contention upon the facts in the case, and the defendant shows, as appears from the agreed statement of facts, that the said Henry Taylor on the 8th day of August, 1908, entered into a contract with the defendant, J. E. Peart, for the sale of said premises, and that thereafter this contract was duly assigned to the defendant William W. Fletcher; that Taylor refused to make conveyance in pursuance of said contract, and on the 21st day of November, 1908, said Fletcher instituted a suit against Taylor and wife in the United States Circuit Court for the district of South Dakota to compel the specific performance of said contract; that said court entered a decree for the specific performance of said contract, and a commissioner was appointed and conveyance made.

It is admitted that Peart and his assignee fully complied with all the terms and conditions of the contract referred to, and was entitled to said decree if Taylor's title was such that he could make legal conveyance of the land.

Reduced to its final analysis, the question resolves itself into a determination of the rights of the parties hereto, under a proper construction of the laws of the United States above quoted, to wit,

the Act of Congress of March 3, 1875, providing a 5-year prohibition of alienation, and the Act of July 4, 1884, providing a 25-year prohibition of alienation, under which the final patent was issued to Taylor in 1909.

(a) It is unnecessary to anything more than state the proposition that the Act of 1881, the provisions of which were followed in the issuance of the original patent to Taylor, had no application whatever to his rights, and was void.

[4] (b) The defendant contends that Taylor, having perfected his five years' residence upon his homestead, was under the homestead laws entitled to his patent on the 10th day of June, 1884; that the law of 1884 was not passed until July 4, 1884, and therefore that his patent, although his proof was not made until December 11, 1884, should have issued under the provisions of the law of 1875, with a five-year limitation of alienation, first, because his right to make final proof had accrued before the passage of the law of 1884, and, second, because the law of 1884 has no application to Indians of the kind or class named in the law of 1875—in other words, that the law of 1875 applies to the persons specifically named in the first paragraph of section 15, "an Indian born in the United States, who is the head of a family, is twenty-one years of age, who has abandoned or may hereafter abandon his tribal relations," etc., and that the Act of 1884 applies to "such Indians as may now be located on public lands, or as may under the direction of the Secretary of the Interior, or otherwise, hereafter so locate," the same being an entirely other and different class of Indians, not having the qualifications prescribed by said section 15 of the law of 1875.

Defendant contends that these two statutes should stand and be given the construction above indicated, and that the latter law is not, and should not be construed as, amending the former. With this contention I cannot agree. These two statutes must be construed together, and the language therein employed must be given its ordinary meaning, in the light of the then existing conditions prompting the legislation. It is my judgment that the law of July 4, 1884, amended section 15 of the law of March 3, 1875, extending the period of limitation of alienation from 5 years to 25 years. U. S. v. Saunders (C. C.) 96 Fed. 268; Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 779; Frazee v. Piper, 51 Wash. 278, 98 Pac. 760. The first provision of the law of 1884 is "that such Indians as may now be located on public lands. * * *" Act Cong. March 3, 1875, was the only statute in existence at that time giving an Indian the right to locate on public lands. In other words, at the time of the enactment of the law of 1884, all Indians then located on public lands were so located under and by virtue of the provisions of the Act of March 3, 1875. Of necessity, therefore, the lawmaking body must have had in mind those Indians that had taken advantage of the Act of 1875 when in the very beginning of this statute they refer to "such Indians as may now be located on public lands." It has been insisted that public lands upon which Indians had located were in fact no longer "public lands"; that the location of an Indian upon public lands,

under the Act of 1875, segregated it from the public domain, and therefore this land that had been located upon by this Indian prior to the passage of the law of 1884 had been segregated, and was not at the time of the passage of that act "public lands."

This suggestion appealed to me as a legal, technical construction of the words "public lands." I am convinced, however, that, taking this statute, viewing its purpose and remembering the policy of the government toward these Indian people, that it referred to all of those who had settled upon the public lands of the United States under the provisions of the only law that up to that time had given them any right to settle thereon, to wit, the statute of March 3, 1875. This act of 1884 related to two classes of Indians—to "such Indians as may now be located on public lands or as may, under the direction of the Secretary of the Interior or otherwise, hereafter so locate." In my opinion Henry Taylor was within the first class. He had then located on public lands under the act of March 3, 1875, the only statute that permitted an Indian to locate upon public lands, and the purpose and effect of the Act of July 4, 1884, was to amend the law of March 3, 1875, as to both classes of Indians—that is, both as to those who were then located on public lands and to those who might thereafter so locate—extending the period of alienation of five years, and declaring "all patents therefor shall be of the legal effect and declare that the United States does and will hold the land thus entered, for the period of twenty-five years," etc.

Under the facts as they are disclosed in this record, it is my judgment that Taylor had not fully complied with all the requirements essential to the perfecting of this title. He had not made his final proof in accordance with the laws, rules, and regulations made pursuant to statute, and had not received his receipt and final certificate. At the time of the passage of the act of July 4, 1884, he was a resident upon this public land of the United States, having filed under the provisions of the Act of 1875, was within the class of Indians referred to in the Act of 1884, and by the plain provisions of that act was protected in the use and occupancy of the land, without the power of alienating it for 25 years, pursuant to the plan that was being developed by the government of the United States for the protection of these dependent people.

[5] Something has been said of a vested right in this Indian. Until final patent is actually issued, it is very clear that it is for the government to say when this guardianship shall cease, and the time may be extended or further limitations made at the will of Congress. It is for Congress to say. National legislation has tended more and more towards the education and civilization of the Indians. But the question whether any Indian has become so far advanced in civilization that they should be let out of the state of tutelage and admitted to the privileges and responsibilities of citizenship is a question to be decided by the nation whose wards they are, and whose citizens they seek to become. Taking the decisions of the courts of the United States altogether, it may be taken as the settled doctrine that Congress, in pursuance of the long established policy of the government, has a right to determine for itself when the guardianship which has

been maintained over the Indian shall cease. It is for that body, and not the courts, to determine when the true interests of the Indian require his release from such condition of tutelage. Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738. While not necessarily controlling upon this court, it is evident upon the face of this record that the officers of the United States whose duty it was to administer these laws of the United States by the issuance of the patent of June 10, 1909, admitted the error in the provisions of the patent issued to Taylor June 6, 1890, and by the issuance of the last patent construed the Act of 1884 as an amendment to the Act of 1875 affecting the rights and interests of this Indian, Henry Taylor, and that, under the facts and circumstances presented to them and presented here now, it was and is the duty of the United States to hold the title to the premises in question for this Indian, Taylor, and his heirs, under the provisions of the law of 1884, for 25 years from the date of the issuance of said patent.

[6] A settled construction by a department of the United States of the laws of the United States will not be overturned by the courts unless such construction is clearly wrong. United States v. Healey, 160 U. S. 136, 16 Sup. Ct. 247, 40 L. Ed. 369; Hewitt v. Schultz, 180 U. S. 139, 21 Sup. Ct. 309, 45 L. Ed. 463; United States v. Finnell, 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890. While it is true that the decisions of the Land Department on matters of law are not binding upon this court in any sense, yet, on questions similar to the one involved in this case, they are entitled to great respect at the hands of any court. The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. United States v. Moore, 95 U. S. 760, 24 L. Ed. 588. Having these suggestions in view, it is my judgment that the correct rule of interpretation is that these two statutes of 1875 and 1884 relate to the same thing, and they must both be taken into consideration in considering the rights of these parties. It is an established rule of law that all acts in pari materia are to be taken together as if they were one law. U. S. v. Freeman, 3 How. 556, 11 L. Ed. 724.

Remembering, in construing these statutes, that the Congress of the United States has, from the early history of the government, undertaken to deal with the Indians as dependent people and to legislate concerning their property with a view to their protection as such, it seems to me clear that the Act of 1884 was a recognition that the 5-year alienation period was not sufficient to protect the Indians in their dependent condition, and the Act of 1884 was an expressed intention upon the part of Congress, in whom the power was vested, to extend that period to all Indians who theretofore had located, or who might thereafter locate on public lands, under the provisions of the homestead laws of the United States, to the term of 25 years. It must be remembered, too, that this Indian, Henry Taylor, is not here complaining of this guardianship of his property, but is content, and desirous of claiming under the patent issued to him under the

provisions of the law of 1884, and the government of the United States is here alleging that he made final proof of his right to the premises in question under the law of 1884, which extended to him the benefits of the 25-year period of limitation upon alienation.

[7] It follows that the contract of sale under which defendants claim was executed by the Indian, Henry Taylor, and wife, without authority of law, and his grantee, Peart, and those claiming under him have and can claim no right, title, or interest in or to said premises, and that the contract of record, together with assignments and other conveyances, are void, and should be canceled.

[8] From the foregoing it also appears that the lands in question should not have been taxed upon the dates named in the agreed statement of facts by the officers of Moody county, in the state of South Dakota. This cannot be done so long as the government of the United States has an interest, either legal or equitable, or is charged with the performance of some obligation or duty respecting the same. The government has not yet relinquished its full title to the lands described in the complaint herein, and they are therefore not taxable. Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 779; U. S. v. Rickert (C. C.) 106 Fed. 1, with citations. The judgment of this court against the said Indian, Taylor, with reference to the premises in question, was entered in a proceeding to which this plaintiff was not made a party; and the same, and the deed made pursuant thereto, are of no effect as against this plaintiff, and should be canceled. It also follows that the judgment of Ballard & Son named in the petition is not a lien on said premises.

The tax liens and tax deeds and evidences of title founded upon the taxation proceedings referred to in the complaint herein are void, and judgment should be entered canceling the same.

It follows that findings of fact, conclusions of law, and judgment should be entered for the plaintiff upon all of the issues; and it is so ordered.